# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1593

_____

Horizon Asset Management Inc.,   *
  *
   Plaintiff/Appellant,   *
  *
Michael Nettie; Iron Workers Local 16   *
Pension Fund; Feivel Gottlieb; Adele   *
Lebowitz; Phyllis J. Winters; Doris   *
Staehr; Raymond J. Kadigan;   *
Momentum Partners; Stephen T.   *
Hibbard,   *
  *
    Plaintiffs,   *
  *
   v.   *
  *
H&R Block, Inc.; Mark A. Ernst;   *
William L. Trubeck,   *
  *
   Defendants/Appellees,   *   Appeals from the United States
  *   District Court for the
Frank J. Cotroneo: James W. Yabuki;   *   Western District of Missouri.
Bret G. Wilson; Thomas M. Bloch;   *
Donna R. Ecton; Henry F. Frigon;   *
Roger W. Hale; Louis W. Smith;   *
Rayford Wilkins, Jr.; David Bak,   *
  *
   Defendants.   *

_____

No. 08-1670
_____

| | |
|---|---|
| Horizon Asset Management Inc.; Michael Nettie, | * |
| | * |
| | * |
| Plaintiffs, | * |
| | * |
| Iron Workers Local 16 Pension Fund, | * |
| | * |
| Plaintiff/Appellant, | * |
| | * |
| Feivel Gottlieb; Adele Lebowitz; Phyllis J. Winters; Doris Staehr; Raymond J. Kadigian, | * |
| | * |
| | * |
| | * |
| Plaintiffs, | * |
| | * |
| Momentum Partners, | * |
| | * |
| Plaintiff/Appellant, | * |
| | * |
| Stephen T. Hibbard, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| H&R Block, Inc.; Mark A. Ernst; William L. Trubeck; Frank J. Cotroneo; James W. Yabuki; Bret G. Wilson; Thomas M. Bloch; Donna R. Ecton; Henry F. D. Seip; Jeffrey E. Nachbor; Melanie K. Coleman, | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| Defendants/Appellees. | * |

-2-

_____

Submitted: October 16, 2008

Filed: September 9, 2009 **(Corrected 10/7/09)**

_____

Before RILEY, BOWMAN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

This case involves two appeals arising from the dismissal of a putative consolidated class action against H&R Block, Inc. ("Block"), and individual defendants who are corporate officers or directors of Block. First, Horizon Asset Management Inc. ("Horizon") appeals the merits of the dismissal, arguing that the district court erred in concluding that Horizon failed adequately to plead scienter under the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Second, Momentum Partners and Iron Workers Local 16 Pension Fund ("Iron Workers") appeal the district court's appointment of Horizon as the sole lead plaintiff to pursue all claims against the defendants. Iron Workers contends that the district court's ruling prevented them from litigating the merits of their derivative claims against the individual defendants, because Horizon refused to include the derivative claims in its consolidated complaint, and the district court subsequently dismissed the complaint and the entire case. We affirm in part, reverse in part, and remand for further proceedings.

I.

Block is a publicly traded corporation that provides a diverse range of tax, investment, mortgage, and business services and products. In June 2005, Block announced that it would restate its financial results filed with the Securities and Exchange Commission ("SEC") for fiscal years 2003 and 2004 and the first three

quarters of fiscal year 2005. The restatement corrected, among other things, errors in the calculation of Block's corporate income tax. In February 2006, Block announced the need for a second restatement of its financial results for fiscal years 2004 and 2005 and the first two quarters of fiscal year 2006, which pertained primarily to errors in determining Block's state effective income tax rate. Also in early 2006, the Attorney General of California commenced an action against Block, alleging that its Refund Anticipation Loan program violated state and federal law, and the Attorney General of New York filed suit asserting that Block fraudulently marketed its Express Individual Retirement Account ("IRA") program.

As a result of these events, shareholders of Block filed nine separate actions in state and federal court. The cases were consolidated in the district court, and the court appointed Horizon the lead plaintiff. Horizon filed a consolidated class action complaint bringing securities fraud claims under section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. The complaint alleged that Block and individual defendants, including Mark A. Ernst, Block's Chairman, President, and Chief Executive Officer, and William L. Trubeck, Block's Executive Vice President and Chief Financial Officer, made false and misleading statements to public investors regarding Block's financial condition. Specifically, Horizon alleged that Block misled investors by (1) failing to disclose the unlawful nature of its Refund Anticipation Loan and Express IRA programs, which artificially inflated reported earnings; (2) failing to disclose its lack of safeguards and procedural controls to ensure accurate financial statements; and (3) misstating financial results due to errors in calculating its state effective income tax rate, which resulted in Block's filing restatements of its financial results. Horizon also asserted an additional claim against the individual defendants, alleging liability of "controlling persons" under section 20(a) of the Securities Exchange Act of 1934. *See* 15 U.S.C. § 78t(b).

The district court granted Block's motion to dismiss the case. The court found that Horizon failed to plead adequately that Block had made any false statements, with

the exception of the financial results that were based on the tax calculation errors. *See In re H&R Block Sec. Litig.*, 527 F. Supp. 2d 922, 926-28 (W.D. Mo. 2007). The court concluded that Block admitted the falsity of the financial results by restating them in a subsequent SEC filing, *id.* at 928, but dismissed the claims because Horizon failed to plead scienter adequately. *Id.* at 930. Because the control-person claims were predicated on the underlying securities fraud violations, the court determined that those claims also failed. The court granted Horizon leave to amend its complaint, but only with respect to the false statements of financial results. *Id.* at 931.

Horizon filed an amended consolidated class action complaint that removed its claims regarding the Refund Anticipation Loan and Express IRA programs and added some additional detail to its other allegations. The district court again granted Block's motion to dismiss, concluding that Horizon still failed to plead scienter adequately. *See In re H&R Block Sec. Litig.*, No. 06-0236, 2008 WL 482403, at *6-7 (W.D. Mo. Feb. 19, 2008). Horizon appeals the dismissal of the amended complaint.

## II.

To state a private securities fraud claim under section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, a plaintiff must allege: "(1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation'; (5) economic loss; and (6) 'loss causation,' *i.e.*, a causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (internal citations omitted) (emphases omitted); *see also In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 888 (8th Cir. 2002). The district court dismissed Horizon's complaint for failing to plead adequately the element of scienter, and that is the only issue on appeal. We review the district court's dismissal *de novo*. *Elam v. Neidorff*, 544 F.3d 921, 926 (8th Cir. 2008).

The PSLRA imposes heightened pleading requirements on private securities actions "to curb perceived abuses" of such actions, including "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007) (internal quotation omitted). As relevant to the pleading of scienter, the PSLRA instructs that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The required state of mind for private securities fraud actions is "'scienter, *i.e.*, the defendant's intention to deceive, manipulate, or defraud,'" or the defendant's "severe recklessness." *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 244 (8th Cir. 2008) (quoting *Tellabs*, 551 U.S. at 313).

"To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter," we must weigh "plausible nonculpable explanations for the defendant's conduct" against inferences favoring the plaintiff's allegation of scienter. *Tellabs*, 551 U.S. at 323-24. Although the inference of scienter need not be "the most plausible of competing inferences," it "must be more than merely reasonable or plausible – it must be cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324 (internal quotation omitted); *see also Ceridian*, 542 F.3d at 244. In conducting this comparison, we "accept all factual allegations in the complaint as true," *Tellabs*, 551 U.S. at 322, and may take judicial notice of Block's public SEC filings. *See Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 663 (8th Cir. 2001); *United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999).[1]

While we assess Horizon's factual allegations "holistically" and "collectively" rather than "in isolation," *Tellabs*, 551 U.S. at 326, Horizon must nevertheless raise

---

[1]We therefore grant Horizon's motion that we take judicial notice of Block's Form 8-K filed with the SEC on June 8, 2005.

a strong inference of scienter for each defendant and with respect to each alleged misrepresentation. *See Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004) (citing 15 U.S.C. § 78u-4(b)(2)); *see also K-Tel*, 300 F.3d at 896 ("taking each defendant individually" when analyzing the pleading of scienter); *cf. Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 827 (8th Cir. 2003) (finding no strong inference of scienter when, *inter alia*, the "complaint makes no particular assertion of which defendant was responsible for which statement or omission or how any defendant participated in the alleged scheme"). Thus, we must consider the allegations against each defendant – Ernst, Trubeck, and Block – separately. Because Horizon's arguments against Ernst and Trubeck are substantially similar, however, we will discuss both individual defendants together before turning to Block.

A.

The only false statements that Horizon alleges were made by Ernst and Trubeck are the financial results misstated in nine of Block's SEC filings from March 16, 2004 to December 12, 2005. *See H&R Block*, 527 F. Supp. 2d at 926-28. Specifically, Horizon cites false financial results that were later restated in Block's second restatement on March 31, 2006. Although the exact dollar amounts varied, all nine filings included errors in the reporting of state income tax expense, deferred income tax assets, accrued income taxes, and other accounts in Block's statement of income and balance sheets that are calculated from these figures. As Block explained in its second restatement of financial results, these misstatements were caused by "errors in determining the Company's state effective income tax rate, including errors in identifying changes in state apportionment, expiring state net operating losses and related factors, for the fiscal years ended April 30, 2005 and 2004, and the related fiscal quarters."

The nine SEC filings that contained the false financial results restated in the second restatement can be grouped into three relevant time periods. The first period includes just one statement, and covers the time until the internal control failures in

corporate tax were allegedly discovered by senior management in April 2004. The second period lasts from when senior management allegedly became aware of internal control failures until Block announced the need for the first restatement of financial results on June 8, 2005, and includes five statements. The final period runs from when Block announced the first restatement until it announced the second restatement, and it includes the last three statements.

1.

The first false statement was made on March 16, 2004. Because Trubeck did not begin his employment with Block until October 4, 2004, Horizon cannot state a claim against him based on this first statement. There is also a time problem with respect to Ernst. Horizon alleges that Ernst knew of accounting problems "[n]o later than April 2004," that is, no later than a month *after* the first false statement.

Horizon does allege that Tim Mertz, Block's vice president for corporate tax, told a confidential witness in 2001 or 2002 that "there were always problems with not reconciling tax accruals and tax liabilities on the state level. This was common knowledge in the accounting department." This allegation, however, tells us nothing about Ernst's state of mind because he was not a part of the accounting department. Horizon contends, based on the statements of a confidential witness, that "whatever knowledge Mertz had about the Company, he shared with Ernst," but such a general, conclusory statement provides only weak support, if any, for an inference of Ernst's scienter. That Mertz at times reported directly to Ernst, also does not provide a basis to infer that Ernst knew everything that Mertz did. *See Kushner*, 317 F.3d at 828 ("[T]he assertion that someone who may have been involved in the scheme 'reported' to [the defendant] is not specific enough to support a strong inference that he knew of or participated in the fraudulent practice while it was occurring.").

Horizon further alleges that by the time of the first false statement, other problems were developing in the corporate tax department, including a decision by

Mertz to outsource corporate tax staffing in 2001, Mertz's dismissals of three to four staff members, and the department's failure to properly maintain and upgrade the tax accounting software. Horizon fails to allege, however, that Ernst even knew about these issues. The one alleged problem that we can readily infer Ernst would have known about is Block's operation without a chief financial officer for eleven months, a period which included the date when this first false statement was made. But a vacancy in a corporate office does not suggest an intent to deceive or severe recklessness on the part of Ernst. Such a vacancy is equally consistent, if not more so, with the normal course of business operations, including the process of finding a replacement officer. Therefore, considering all of the allegations regarding Ernst's state of mind when making the first false statement, we conclude that Horizon has failed to raise a strong inference of scienter.

2.

The second set of false statements were made after April 2004, when, according to Horizon, "the internal controls in Corporate Tax were known to be ineffective by the Company's senior management, including defendants Trubeck and Ernst as well as the Manager of Corporate Tax, Timothy Mertz." Horizon based this assertion on a statement made by Brad Campbell, Block's Assistant Vice President for Internal Audit, alleging that the discovery of the control failures, specifically the tax accounting errors, occurred during the process of Block's efforts to comply with section 404 of the Sarbanes-Oxley Act of 2002. *See* 15 U.S.C. § 7262. The complaint is unclear about whether Horizon had direct knowledge of Campbell's statement or whether Horizon is relying on the second-hand reporting of a confidential witness to whom Campbell made the statement. In any event, the allegation does not significantly support Horizon's efforts to plead scienter.

The allegation is inaccurate in one important respect: It contends that Trubeck had knowledge of the accounting problems in April 2004, six months before he began working for Block. Thus, the allegation does not support an inference of scienter with

-9-

respect to Trubeck, and the credibility of the statement is weakened with respect to its allegations against Ernst. It also reveals another fault in the complaint: Horizon has not alleged how Campbell discovered that Ernst was aware of the control failures or how Campbell would have a basis to know what Ernst knew. *See In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 959-60 (8th Cir. 2008) (discussing the need to plead the basis of a witness's knowledge in order to have the witness's allegations meet the standard of the PSLRA). Moreover, even if we were to assume that the allegation were true and that Ernst knew about the accounting problems, Horizon does not allege that Ernst knew that the financial results released in the five SEC filings were false or that he intended to deceive the public.

According to Horizon, the inference that Ernst and Trubeck made these five false statements – or, with respect to Trubeck, at least the last three statements made while he was employed by Block – is further strengthened by the slow pace of the internal investigation once the accounting errors were discovered. We disagree. The facts pled in Horizon's complaint demonstrate that as soon as the accounting errors were discovered in April 2004, Mertz directed that an internal investigation begin, and that the issue was then researched "intensively" by two different employees. At some point prior to announcing its first restatement of financial results on June 8, 2005, Block also consulted with its independent auditors to conclude that a restatement was necessary. This was a prudent course of action that weakens rather than strengthens an inference of scienter. *See Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 761 (7th Cir. 2007) ("Taking the time necessary to get things right is both proper and lawful. Managers cannot tell lies but are entitled to investigate for a reasonable time, until they have a full story to reveal.").

Throughout the period that Block investigated its internal control failures, and as soon as Block's senior management allegedly became aware of the problems, Block repeatedly disclosed its corporate accounting control weaknesses. In its Form 10-K filed on July 2, 2004, it stated:

-10-

[W]e identified a series of control weaknesses related to our corporate tax accounting function. These weaknesses relate specifically to the reconciliation and level of detailed support of both current and deferred income tax accounts. We also determined an acceleration of taxable income was warranted in one of our segments, however, there was no change to our total income tax provision. Upon identification of these control weaknesses, immediate corrective action was undertaken. Our efforts to strengthen financial and internal controls continue. We expect these efforts to be completed by the end of fiscal year 2005.

Block included similar disclosures in all of its SEC filings until it filed its first restatement of financial results on July 29, 2005. These statements do not support an inference that Ernst and Trubeck intended to deceive the public or acted with severe recklessness. Rather, they portray managers who disclosed known accounting problems and warned that work on their internal controls was continuing. Therefore, considering all of Horizon's allegations relating to the second set of false statements, we conclude that Horizon has failed to raise a strong inference that Ernst or Trubeck acted with scienter.

3.

Turning to the third and final set of false statements – those made after the need for the first restatement was announced on June 8, 2005 – Horizon's central argument is that Ernst and Trubeck acted with scienter in continuing to state false financial results when they knew that the first restatement did not correct all of the false financial results and that a second restatement would be necessary. Horizon's strongest allegation to support this argument is a statement by a confidential witness that he

was directly informed by his manager Brad Campbell and also Jeff Brown, who worked in accounting, that senior management, including Ernst and Trubeck, knew and had spoken of the fact, as of September or October of 2005, that a further restatement of the Company's financial

-11-

statements with respect to the misstated tax accruals would be necessary, although they did not yet know the exact amount.

Assuming that the confidential witness was told this information at the beginning of September, the allegation would be relevant to whether the last two false statements in this time period were made with scienter. The allegation is not strong and compelling, however, because it does not provide the sources' basis of knowledge. *See Hutchinson*, 536 F.3d at 959-60; *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 783 (8th Cir. 2008). The allegation does not state whether Campbell and Brown spoke directly with Ernst and Trubeck or whether they merely conveyed hearsay information that was passed along by others. Any inference of scienter is further weakened by the fact that, elsewhere in Horizon's complaint, this same confidential witness inaccurately alleged that Trubeck had knowledge of accounting errors at a time when he was not even employed by Block.

Block's continued disclosures of its control problems in all three of the filings that contained false financial results during this period also weaken the inference that Ernst and Trubeck acted with scienter. In Block's SEC filing that included the first restatement of financial results on July 29, 2005, it explained that "as of the end of the period covered by this Annual Report on Form 10-K," Block's "Disclosure Controls and procedures were not effective." Block then described the specific deficiencies discovered in its accounting for income tax and stated that the "deficiencies resulted in errors in the Company's accounting for income taxes" that "were corrected prior to the issuance of the" restated financial results. Block continued, however, to explain that:

> In the aggregate, these deficiencies represent a material weakness in internal control over financial reporting on the basis that there is a more than remote likelihood that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected by its internal control over financial reporting. Because of this material weakness in internal control over financial reporting, management

-12-

concluded that, as of April 30, 2005, the Company's internal control over financial reporting was not effective . . . .

Although Block described the efforts it took to improve internal controls, and stated that it "believes it has established appropriate controls and procedures and created the appropriate tax account analysis and support subsequent to April 30, 2005," it also disclosed that:

> In addition to the above actions, management will conduct a comprehensive evaluation of the corporate tax function, including resource requirements, during the current fiscal year to identify and implement additional improvements to ensure compliance with the controls and procedures that have been put in place to remediate deficiencies previously identified.

Similar disclosures discussing the ongoing review, the hiring of a third-party firm to assist in the review, and additional improvements to controls were made in the subsequent two SEC filings. Horizon argues that certain statements, such as Block's statement that it corrected the errors caused by the deficiencies and its belief that it had established appropriate controls after April 2005, suggest that Ernst and Trubeck deceptively made it appear that all of Block's accounting problems were corrected. But Horizon takes those statements out of context. Looking at Block's disclosures quoted above and in its other filings, it is apparent that Block disclosed an ongoing process to remediate complex accounting problems.

Horizon attempts to overcome this deficiency by pointing to statements of securities analysts who misinterpreted Block's disclosures. One analyst, for example, opined that "this blemish has been rectified and that it will not be an issue for investors going forward." Statements made by third-party securities analysts, however, are insufficient to raise a strong inference of scienter where, as here, there are no allegations that the defendants adopted the statements, represented that they were true, used the analysts as conduits by providing them false information, or

-13-

otherwise became "'entangled'" with the analysts. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 743 (8th Cir. 2002) (quoting *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 163 (2d Cir. 1980)); *see also Raab v. Gen. Physics Corp.*, 4 F.3d 286, 288-89 (4th Cir. 1993). We conclude, therefore, that these allegations with respect to the last three false statements do not raise a strong inference that Ernst and Trubeck made the statements with the requisite scienter.

4.

Horizon alleges that an inference that Ernst and Trubeck acted with scienter also arises from their signing of certifications. Horizon argues that because Ernst and Trubeck signed certifications pursuant to sections 302 and 906 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7241; 18 U.S.C. § 1350, verifying that Block's internal controls were sufficient when the tax accounting controls were, in fact, inadequate, there is a strong inference of scienter. This court rejected a comparable argument in *Ceridian*, explaining that "if an allegation that a mandatory Sarbanes-Oxley certification was later proven to be inaccurate is sufficient to give rise to the requisite strong inference, 'scienter would be established in every case where there was an accounting error or auditing mistake by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA.'" *Ceridian*, 542 F.3d at 248 (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555 (5th Cir. 2007)).

Horizon also alleges that an inference of scienter is strengthened by the fact that Trubeck had motive to commit fraud because of his desire to receive almost $258,000 in bonuses under Block's Short Term Incentive Program, which awarded bonuses based upon corporate performance. "Motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter interference," *Tellabs*, 551 U.S. at 325, but merely pleading "'that a defendant's compensation depends on corporate value or earnings does not, by itself, establish motive to fraudulently misrepresent corporate value or earnings.'" *Kushner*, 317 F.3d at 830 (quoting *Green*

-14-

*Tree*, 270 F.3d at 661). A complaint must show "that the benefit to an individual defendant is unusual," for example, that the benefit is of an "overwhelming magnitude" and received under "suspicious circumstances." *In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079, 1085 (8th Cir. 2005). We have held that bonuses as high as $630,000 and $355,000 paid to a corporate officer under a performance plan were not unusual. *See id.*; *Kushner*, 317 F.3d at 830. Thus, Trubeck's bonuses over two years totaling approximately $258,000, where there are no allegations of suspicious timing, are insufficient. *See Ceridian*, 542 F.3d at 247.

Horizon makes a similar allegation that Ernst and Trubeck had motive to commit fraud because they wanted to ensure a subsidiary's success in issuing $400 million in promissory notes, and Block's profitability was important to that success. This assertion is also unavailing. "The desire to make a company seem more profitable is a desire universally held among corporations and their executives," and thus insufficient to support an inference of scienter, even when tied to a debt offering. *Cerner*, 425 F.3d at 1085 (internal quotation omitted). Therefore, we find that Horizon's motive allegations do not support a strong inference of scienter.

Finally, Horizon contends that even if its complaint does not raise a strong inference of intent "to deceive, manipulate, or defraud," *Tellabs*, 551 U.S. at 313, it at least raises a strong inference that Ernst and Trubeck acted with severe recklessness. Proof of severe recklessness may establish the requisite scienter. *Ceridian*, 542 F.3d at 244. To demonstrate severe recklessness, a plaintiff must allege "highly unreasonable omissions or misrepresentations amounting to an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Kushner*, 317 F.3d at 828. A plaintiff must allege more than "incompetence" or corporate mismanagement before a claim of negligence rises to the level of securities fraud. *Ceridian*, 542 F.3d at 249. None of the allegations discussed above, with respect to any of the nine false statements, amounts to highly unreasonable conduct or an extreme departure from the standards of ordinary care.

At best, Horizon may have alleged facts showing that Ernst was negligent in not discovering problems in the corporate tax department sooner than he did.

In sum, after evaluating all of Horizon's allegations with respect to each of the nine false statements, and considering the competing inference that the statements were made mistakenly due to corporate tax accounting problems, we conclude that Horizon has not raised a strong inference that Ernst or Trubeck made any of the statements with the requisite scienter. Therefore, the district court did not err in dismissing Horizon's claims against Ernst and Trubeck.

B.

Horizon argues that even if its complaint has not raised a strong inference with respect to Ernst and Trubeck, it still sufficiently pleads scienter as to Block. The appropriate standard for considering the pleading of corporate scienter under the PSLRA appears to be an open question in this circuit. Horizon contends that Block's scienter can be imputed from the allegations of the scienter of Block corporate officer Mertz, who was not named as a defendant in this action. Horizon argues that Mertz need not be named as a defendant in order to impute his state of mind to Block, *see Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008), and that Mertz's intent can be imputed to Block because Mertz had "a senior position within the Company."

Assuming for the sake of argument that Mertz's state of mind can be imputed to the corporation, either on Horizon's theory or on a narrower basis, *see, e.g.*, *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365-66 (5th Cir. 2004), we conclude that Horizon's complaint does not raise a strong inference that Mertz acted with scienter. Many of the allegations regarding Mertz's state of mind – such as his knowledge in April 2004 that internal controls in corporate tax were ineffective and the slow pace of the investigation – are identical to Horizon's insufficient allegations against Ernst and Trubeck.

-16-

The primary additional allegation is that Mertz told a confidential witness in 2001 or 2002 that "there were always problems with not reconciling tax accruals and tax liabilities on the state level. This was common knowledge in the accounting department." Accepting the allegation as true, Mertz knew about the accounting problems at the time of the first false statement on March 16, 2004, and before Block announced its discovery of control weaknesses in corporate tax. Even so, however, Horizon does not allege that Mertz knew or was severely reckless in not knowing that the problems were causing materially false financial results. Horizon does not allege that the problems of which Mertz was aware caused the false statements that were corrected in the second restatement, rather than those statements that were corrected in the first restatement. Horizon has thus failed to allege facts that raise a strong inference that Mertz acted with scienter with respect to the false statements alleged in the complaint.

For these reasons, Horizon has failed to plead scienter adequately with respect to Block or the individual defendants. Because the control-person claims under section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(b), are predicated on some underlying primary violation, Horizon also has failed to state a claim under section 20(a). *See Hutchinson*, 536 F.3d at 961-62. Therefore, the district court did not err in dismissing the consolidated complaint.

## II.

Momentum Partners and Iron Workers Local 16 Pension Fund each brought an action in the district court asserting derivative claims on behalf of Block against its directors. These claims alleged breaches of fiduciary duties relating to Block's allegedly wrongful business practices, including the sales of Refund Anticipation Loans, Peace of Mind guarantees, and Express IRAs, as well as other illegal and unethical practices. Seven other actions were also brought against Block in state and federal court. Three of the actions asserted federal securities fraud claims against Block and the individual defendants arising out of Block's two successive

restatements of financial results and Block's alleged misrepresentations regarding its Refund Anticipation Loan and Express IRA programs. Four of the actions – including three state actions that were removed to federal court – asserted derivative claims on behalf of Block against members of Block's board of directors, alleging breaches of their fiduciary duties, including claims arising out of violations of federal securities laws.

Block moved for the consolidation of the six direct and derivative securities actions, and Momentum Partners and Iron Workers moved to consolidate their two actions. The district court consolidated all nine cases together under Federal Rule of Civil Procedure 42(a), and stated its intention to "appoint one institutional co-lead plaintiff and one individual co-lead plaintiff," who would together "file an amended complaint asserting all claims against Defendants." The district court also ordered prospective lead plaintiffs "to provide the Court with the pertinent information necessary to determine which two Plaintiffs will adequately represent each of the two established classes of claims."

On November 3, 2006, after reviewing requests to be appointed lead plaintiff by Iron Workers, Horizon, and two individual plaintiffs in the securities derivative actions, the district court appointed Horizon as the sole lead plaintiff. (R. Doc. 48, at 1). The court stated that it was departing from its initial plan to appoint one institutional and one individual lead plaintiff, because only Horizon had complied with its order to provide the pertinent information to determine the most adequate plaintiff. (*Id.*). Iron Workers and Momentum Partners moved for reconsideration, arguing that Iron Workers had provided the necessary information, and that Horizon was not an adequate representative because it had admitted that it would not assert derivative fiduciary claims. Alternatively, Iron Workers and Momentum Partners asked for certification to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The district court denied the motion, determining that the claims asserted by Iron Workers and Momentum Partners "are not really derivative claims," and concluding that it was therefore irrelevant whether Horizon failed to assert derivative claims.

-18-

Horizon subsequently filed a consolidated complaint that asserted no derivative claims. The district court eventually dismissed the consolidated amended complaint for failure to state a claim, and entered a final judgment dismissing the case. *See In re H&R Block Sec. Litig.*, No. 06-0236, 2008 WL 482403, at *6-7 (W.D. Mo. Feb. 19, 2008). Iron Workers and Momentum Partners appeal, arguing that the district court abused its discretion by appointing Horizon as the sole plaintiff.

The district court's consolidation of the nine securities and derivative actions against Block under Federal Rule of Civil Procedure 42(a) was not an abuse of discretion. The actions involved common parties, overlapping legal issues, and related factual scenarios, and the consolidation itself did not cause unfair prejudice. But the district court's decision to appoint Horizon as the sole lead plaintiff for all claims against Block, including the derivative claims, is problematic. The district court determined that the claims asserted by Iron Workers and Momentum Partners "are not really derivative claims," but provided little explanation for its conclusion. Having reviewed Momentum Partners' amended complaint, filed on August 24, 2006, and Iron Workers' complaint filed on June 8, 2006, we conclude that the complaints allege derivative claims that are not predicated on violations of federal securities laws.

It may be debatable whether a conflict of interest necessarily prevents a single plaintiff, such as Horizon, from bringing both direct claims against a corporation and derivative claims on the corporation's behalf. *See, e.g.*, *ShoreGood Water Co., Inc. v. U.S. Bottling Co.*, No. 08-2470, 2009 WL 2461689, at *4-6 (D. Md. Aug. 10, 2009); *Ryan v. Aetna Life Ins. Co.*, 765 F. Supp. 133, 135-37 (S.D.N.Y. 1991); *First Am. Bank & Trust v. Frogel*, 726 F. Supp. 1292, 1298 (S.D. Fla. 1989). In this case, however, Iron Workers presented the court with evidence that Horizon *would not* assert its derivative claims, and asked the court to reconsider its appointment based on the conflict of interest. A consolidated case "retain[s] its independent status," and plaintiffs in a consolidated action, like Iron Workers, are still "entitled to a decision on the merits of their claims." *DeGraffenreid v. Gen. Motors Assembly Div., St. Louis*, 558 F.2d 480, 486 (8th Cir. 1977). Once it was clear that Horizon would not

pursue the derivative claims, it was error for the district court to abide by its decision to appoint Horizon as the sole lead plaintiff to prosecute a single consolidated complaint.

Accordingly, we reverse the district court's order of November 3, 2006, insofar as it designates Horizon the lead plaintiff for the derivative claims brought by Iron Workers and Momentum Partners and requires a single consolidated complaint. On remand, the separate complaints filed by Iron Workers and Momentum Partners shall be reinstated.

\*       \*       \*

For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part, and the case is remanded for further proceedings consistent with this opinion.

_____