# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2833

_____

Larry Elam, individually and
on behalf of all others similarly situated,

        Appellant,

    v.

Michael Neidorff; J. Per Brodin;
Centene Corporation; Karey D. Witty,

        Appellees.

William L. Smith,

        Movant

Wayne Stolte,

        Movant - Appellant.

_____

Layton Jackson, individually and
on behalf of all others similarly situated,

        Plaintiff

    v.

Centene Corporation; J. Per Brodin;
Michael Neidorff,

Appeal from the United States
District Court for the
Eastern District of Missouri.

                    Defendants - Appellees          *
                                                    *
William L. Smith,                                   *
                                                    *
                    Movant                          *
                                                    *
Wayne Stolte,                                       *
                                                    *
                    Movant - Appellant              *
                              _____

                         Submitted: April 18, 2008
                           Filed: October 16, 2008
                              _____

Before MURPHY, COLLOTON, and SHEPHERD, Circuit Judges.
                              _____

SHEPHERD, Circuit Judge.

       This appeal arises out of a securities fraud class action against Centene
Corporation; Michael Neidorff, Centene's Chairman and Chief Executive Officer;
Karey L. Witty, Centene's Senior Vice President and Chief Executive Health Plan
Business; and J. Per Brodin, Centene's Senior Vice President and Chief Financial
Officer (collectively "defendants"). Plaintiffs allege violations of sections 10(b) and
20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b),
78t(a), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5,
between April 25, 2006 and July 17, 2006.

       Defendants moved to dismiss the consolidated amended class action complaint
("amended complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) and
section 21D(b)(3)(A) of Exchange Act, as amended by the Private Securities
Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4(b)(3)(A). The district

court[1] granted the motion to dismiss. Plaintiffs contend that the district court erred in determining that their pleading was insufficient under the PSLRA. We affirm.

I.

Because this appeal arises from the district court's grant of a motion to dismiss, we draw the relevant facts from the class complaint. In re Cerner Corp. Sec. Litig., 425 F.3d 1079, 1082 (8th Cir. 2005). Centene is a St. Louis, Missouri-based healthcare enterprise that primarily provides programs and related services to individuals receiving benefits under Medicaid, including Supplemental Security Income and the State Children's Health Insurance Program. Centene acts as an intermediary between the government and Medicaid recipients in the states in which Centene has contracts. Centene receives a monthly amount for each Medicaid recipient in its plan and, in turn, pays for the recipient's healthcare services.

In reporting its quarterly earnings, Centene includes not only the costs incurred and billed during the quarter but also an estimate of medical costs that have been incurred but not reported (IBNR). IBNR is an estimate of claims liability because some medical events occur before the end of a given reporting period (and Centene is therefore liable to pay them) but have not yet been formally billed to the company. Centene estimates its IBNR on a monthly basis employing various factors, including in-patient hospital utilization dates and prior claims experience. Independent actuaries review Centene's quarterly estimates.

On April 25, 2006, Centene filed its Form 10-Q with the SEC for the first quarter of 2006 and issued a press release. As required by the Sarbanes-Oxley Act of 2002, 15 U.S.C. §§ 7201-7266, Neidorff and Witty certified that the financial

---

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

statements were fairly presented.  See 15 U.S.C. § 7241(a).  Both documents were positive and in line with analyst estimates.  Centene reported net earnings of $8.8 million, or $.20 per diluted share for the first quarter of 2006.

With respect to IBNR,  the Form 10-Q provided that:

> *Failure to Accurately Predict Our Medical Expenses Could Negatively Affect Our Reported Results.*  Our medical expenses include estimates of IBNR medical expenses.  We estimate our IBNR medical expenses monthly based on a number of factors.  We cannot be sure that our IBNR estimates are adequate or that adjustments to those estimates will not harm our results of operations.  From time to time in the past, our actual results have varied from our estimates, particularly in times of significant changes in our members.  Our failure to estimate IBNR accurately may also affect our ability to take timely corrective actions, further harming our results.

In terms of guidance for the second quarter,[2] Witty was quoted in the press release as stating:

> For the second quarter of 2006, we expect revenue in the range of $495 million to $500 million and earnings per diluted share of $0.25 to $0.30.  For the full-year 2006, we anticipate revenue in the range of $2.08 billion to $2.16 billion and earnings per diluted share of $1.53 to $1.70.

On June 6, 2006, Centene hosted an investor day where its management reiterated its guidance for the second quarter for 2006 and the full year 2006, with earnings estimated at $1.53 to $1.70 per share.  An investor comment by Wachovia Securities reported that Centene's management had stated that first quarter medical cost trends were improving in Indiana and Ohio.

_____

[2]"A guidance is information that a company provides as an indication or estimate of its future earnings."  In re Hutchinson Tech., Inc. Sec. Litig., 536 F.3d 952, 955 n.3 (8th Cir. 2008) (quotation omitted).

On June 20, 2006, Neidorff discussed the ongoing cost pressures that Centene was facing. Neidorff did not comment on guidance, explaining that it was Centene's policy not to do so absent a material change. Neidorff stated,

> We're not projecting anything that is devastating or any devastation out there. I'm not worried about big issues or big blowups. I'm worried about little things like I'm talking to you about, our ability to fix them in a timely enough fashion that it doesn't impact one quarter or another.

Neidorff's remarks were available to the public via the Internet.

On July 18, 2006, Centene issued a press release announcing that its second quarter earnings would be substantially lower than expected as a result of an adjustment of approximately $9.7 million, or $0.14 per diluted share, for additional medical costs primarily related to March 2006 in Indiana and Texas. Centene reported preliminary earnings of $0.10 to $0.12 per diluted share for the second quarter of 2006. Centene also reduced its earning guidance for the remainder of 2006 to a range of $0.95 to $1.04 a share, citing adverse medical cost trends. Following the announcement, Centene stock dropped from $21.04 to $13.60, or approximately 35 percent. Analysts expressed surprise at Centene's revised guidance.

Shortly thereafter, securities fraud class actions were filed against the defendants. The district court consolidated those actions and appointed Wayne Stolte as lead plaintiff. Stolte subsequently filed an amended complaint. Defendants moved to dismiss the amended complaint, asserting that the allegations contained therein failed to state a security fraud claim against any of the defendants. After a hearing, the district court granted the motion to dismiss, finding that plaintiffs failed to allege facts demonstrating that defendants had misrepresented a material fact or acted with scienter. Plaintiffs bring this appeal.

II.

We review de novo the district court's dismissal of a securities fraud amended complaint, In re NVE Corp. Sec. Litig., 527 F.3d 749, 751 (8th Cir. 2008), affirming only if the plaintiffs can prove no set of facts which would entitle them to relief, In re Hutchinson Tech., Inc. Sec. Litig., 536 F.3d 952, 958 (8th Cir. 2008). Although we construe the complaint liberally and accept the facts pleaded as true, we reject unwarranted inferences and conclusory or catch-all assertions of law. In re Cerner Corp. Sec. Litig., 425 F.3d at 1083.

III.

The PSLRA imposes "heightened pleading requirements" on securities fraud plaintiffs. In re NVE Corp. Sec. Litig., 527 F.3d at 751. In order to survive a Rule 12 motion to dismiss, the complaint must: "1) 'specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading,' and 2) 'state with particularity facts giving rise to a strong inference that the defendant acted with [scienter].'" Id. (quoting 15 U.S.C. § 78u-4(b)(1)-(2) (internal citation omitted)); see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. ___, ___, 127 S. Ct. 2499, 2508 (2007); see also Cornelia I. Crowell GST Trust v. Possis Med., Inc., 519 F.3d 778, 782 (8th Cir. 2008) (listing elements which must be shown for securities action to survive a motion to dismiss). On appeal, plaintiffs assert that their pleading sufficiently alleges both falsity and scienter, satisfying the elevated pleading standard for their securities fraud class action.

A.

Plaintiffs allege that Centene's stock price was artificially inflated because of three sets of false statements made by Centene and its officers on April 25, 2006; June 6, 2006; and June 20, 2006. Plaintiffs assert that defendants must have been aware of

the additional $9.7 million in medical costs as early as February and March 2006 through Centene's mandatory prior-authorization program for various treatments and through its monitoring systems. Defendants acknowledge Centene's efforts to monitor medical costs. However, defendants contend that plaintiffs have not pled facts demonstrating that defendants had access to, or knowledge of, information contradicting the April or June statements when made.

Plaintiffs' argument is that Centene must have known about the additional $9.7 million in medical costs in April and June of 2006, when the allegedly false statements were made, because Centene touts its ability to predict medical costs. Thus, plaintiffs ask this court to infer that defendants' April and June statements must be false based solely on defendants' representations as to their ability to estimate medical costs. However, the PSLRA's falsity pleading requirement requires particularity, see 15 U.S.C. § 78u-4(b)(1); In re NVE Corp. Sec. Litig., 527 F.3d at 751, and cannot be satisfied with allegations that defendants made statements "and then showing in hindsight that the statement is false . . . ," see In re Navarre Corp. Sec. Litig., 299 F.3d 735, 743 (8th Cir. 2002). Rather, "[t]he purpose of [the PSLRA] heightened pleading requirement was generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading fraud by hindsight." Id. at 742 (internal quotations omitted). The pleading fails to point to any contemporaneous reports, witness statements, or any information that had actually been provided to defendants as of April or June that indicated that Centene would need to increase estimated medical costs. See Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir. 2000) ("Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them.").

Furthermore, we disagree with plaintiffs' assertion that they have demonstrated falsity with respect to the June statements because, as time progressed during the class period, more information regarding the accuracy of Centene's estimate of medical costs in April 2006 became available. Despite this increase in information, plaintiffs

again fail to allege any specific fact that would render the June statements false. Thus, plaintiffs' allegations again lack the requisite specificity under the PSLRA. See 15 U.S.C. § 78u-4(b)(2); Tellabs, 127 S. Ct. at 2508; In re NVE Corp. Sec. Litig., 527 F.3d at 751. Accordingly, the district court properly found that plaintiffs have not adequately pled that defendants' April and June statements were false when made.

B.

Plaintiffs also contend that the district court erred in finding that they had not pled facts showing the requisite mental state, scienter. Scienter requires a showing of "reckless or intentional wrongdoing," Cornelia I. Crowell GST Trust, 519 F.3d at 782 (quoting In re Navarre Corp. Sec. Litig., 299 F.3d at 745), and "can be established in three ways: (1) from facts demonstrating a mental state embracing an intent to deceive, manipulate or defraud; (2) from conduct which rises to the level of severe recklessness; or (3) from allegations of motive and opportunity," id. In order to survive a motion to dismiss, plaintiffs' allegations, "accepted as true and taken collectively," Tellabs, 127 S. Ct. at 2511, must "give rise to a strong inference of scienter," id. at 2509, meaning that the inference "must be more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent," id. at 2504-05. Plaintiffs contend that a strong inference of scienter is demonstrated by: (1) Neidorff's and Witty's stock sales in April 2006; (2) the defendants' access to information which conflicted with their April and June statements; (3) the fact that medical costs, including IBNR, were at the core of Centene's business; and (4) the close temporal proximity of the alleged misrepresentations and the July 18, 2006 announcement. We address each in turn.

First, Neidorff and Witty each sold a portion of their personal holdings of Centene stock in April 2006 pursuant to Rule 10b5-1 trading plans, in place since

December 2005.[3] The sales constituted 5.3 percent of Neidorff's unrestricted holdings and 2.4 percent of Witty's unrestricted holdings.[4] Stock sales pursuant to Rule 10b-5 trading plans "can raise an inference that the sales were prescheduled and not suspicious." Cent. Laborers Pension Fund v. Integrated Elec. Servs. Inc., 497 F.3d 546, 554 n.4 (5th Cir. 2007) (quotation omitted). This is particularly true where, as here, the stock sales at issue represent only a small portion of each seller's overall holdings. See In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1427-28 (9th Cir.1994) (finding that sales based on a pre-determined trading plan coupled with small sales amounts rebutted allegations of scienter); see also In re Navarre Corp. Sec. Litig., 299 F.3d at 747 ("Insider stock sales are not inherently suspicious; they become so only when the level of trading is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from the undisclosed information." (quotation omitted)). Accordingly, no inference of scienter arises from Neidorff's and Witty's April 2006 stock sales.

Second, allegations that a defendant made materially misleading statements, while in possession of conflicting information, support a strong inference of scienter.

---

[3]"A 10b5-1 plan is an agreement which allows corporate insiders to set a schedule by which to sell shares over time . . . ." See Cent. Laborers Pension Fund v. Integrated Elec. Servs. Inc., 497 F.3d 546, 554 n.4 (5th Cir. 2007) (quotation omitted). Neidorff's and Witty's plans lay out the dates at which trades will be made in advance and give up control of the trades to a broker. Appellant's App. at 99-112. With respect to April 2006, Neidorff's plan provides: "On April 27, 2006 sell 40,000 shares of the common stock provided the price is at or above $25 per share. Also, on April 27, 2006 sell an additional 10,000 shares of the common stock provided the price is at or above $30 per share." Appellant's App. at 99. Witty's plan states: "On April 28, 2006 sell 10,000 shares of the common stock provided the price is at or above $25 per share." Appellant's App. at 106.

[4]On April 27, 2006 and April 28, 2006, Neidorff sold 40,000 shares of his personal holdings of Centene common stock at $25.21 and $25.35 per share under his plan. On April 28, Witty sold 5,000 shares at $25 under his plan.

See Fla. State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 665 (8th Cir. 2001) ("One of the classic fact patterns giving rise to a strong inference of scienter is that defendants published statements when they knew facts or had access to information suggesting that their public statements were materially inaccurate."). However, plaintiffs do not allege that, concurrent with the April or June statements, defendants knew of any specific fact indicating that Centene's second quarter earnings would be substantially lower due to the additional $9.7 million dollars in medical costs for first quarter events. Rather, plaintiffs assert that, based on the sophistication of Centene's medical cost-estimating process, defendants must have known of such costs at the time the statements were made. These conclusory allegations do not give rise to an inference of scienter.

Third, plaintiffs assert that they have demonstrated scienter because the fact that medical costs, including IBNR, are at the core of Centene's business supports a finding that the individual defendants knew of the additional $9.7 million dollars in medical costs at the time the April and June statements were issued. Plaintiffs have offered nonbinding authority for imputing knowledge to a company's key officers when the information is at the core of its operations. See, e.g., In re Ancor Commc'ns, Inc., 22 F. Supp. 2d 999, 1005 (D. Minn. 1998) ("[F]acts critical to a business's core operations . . . generally are so apparent that their knowledge may be attributed to the company and its key officers." (quoting Epstein v. Itron, Inc., 993 F. Supp. 1314, 1326 (E.D. Wash. 1998), abrogated by, In re Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 974-75 (9th Cir. 1999))). This court has not expressly addressed the core operations method of pleading scienter,[5] and we note that the Fifth and Ninth Circuits

[5]The district court relied on Kushner v. Beverly Enters., Inc., 317 F.3d 820 (8th Cir. 2003), in rejecting plaintiffs' core operations argument, and both parties discuss the case on appeal. The plaintiffs in Kushner purported to demonstrate scienter by asserting "that it was reckless for the defendants not to know of the scheme given its sheer size and its effect on the company's core business." Id. at 828. Though the Kushner Court found that the plaintiffs had failed to plead scienter, id. at 830, it did not expressly address their core business contention, see id. at 828-30. Accordingly,

have rejected it. See In re Read-Rite Corp. Sec. Litig., 335 F.3d 843, 848 (9th Cir. 2003); Rosenzweig v. Azurix Corp., 332 F.3d 854, 867 (5th Cir. 2003).

We need not determine whether the core operations approach can be utilized to plead scienter. Even if the proper factual allegations could warrant its application, plaintiffs have not made such a showing. Defendants do not dispute the core nature of medical costs to Centene's business. However, in order to attribute knowledge of the additional medical costs to Centene's officers at the time of the April or June statements on this basis, we would at least require a showing that this information was known within the company at that time. See Kushner v. Beverly Enters., Inc., 317 F.3d 820, 828-29 (8th Cir. 2003) (rejecting "investors attempt to make out a strong inference of scienter based upon circumstantial evidence-namely, that it was reckless for the defendants not to know of the scheme given its sheer size" absent "a showing that the defendants had knowledge of contradictory crucial information at the time that they made their statements"); In re Northpoint Commc'ns Group, Inc. Sec. Litig., 184 F. Supp. 2d 991, 998 (N.D. Cal. 2001) ("[U]pon the laying of a proper factual foundation it may be inferred that facts critical to a business's core operations or an important transaction are known to a company's key officers. Such a foundation requires, at a minimum, a showing (with all requisite particularity) that the critical facts were actually known within the company." (internal citation omitted)). Here, plaintiffs merely assert that this information must have existed and must have been known. Plaintiffs' speculation is plainly insufficient to support an inference of scienter.

Finally, the close proximity between defendants' June statements and the mid-July announcement that resulted in the 35 percent decline in stock value is relevant to scienter. See Helwig v. Vencor, Inc., 251 F.3d 540, 552 (6th Cir. 2001) (listing "closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information" as a factor in the scienter inquiry). However,

---

Kushner is not dispositive.

as the Sixth Circuit stated, "Without more, inferring scienter from [] temporal proximity . . . is nothing more than speculation." Fidel v. Farley, 392 F.3d 220, 232 (6th Cir. 2004). The Fidel Court observed:

> The class members appear to be assuming that because Fruit of the Loom experienced financial difficulties within a year after the audit report was issued, Ernst & Young deliberately or recklessly ignored financial information that must have been present during its audit of 1998 financial data. However, this conjecture cannot support the inference of scienter under the PSLRA's pleading requirements because there is no indication from the . . . allegations that Ernst & Young knew or recklessly disregarded information it had before it at the time it issued its audit report.

Id. Similarly, here the plaintiffs are assuming that, because Centene experienced financial difficulties within a month of the positive statements, Centene deliberately or recklessly disregarded information it had before it at the time it issued the June statements. Though the temporal proximity here is more troubling than the one year at issue in Fidel, we cannot on that basis alone find a strong inference of scienter because plaintiffs' "allegations rest on nothing more than hindsight." Id.; see In re Navarre Corp. Sec. Litig., 299 F.3d at 742.

In sum, accepting Plaintiffs' allegations as true and viewing them as a whole, Tellabs, 127 S. Ct. at 2511, they do not give rise to a strong inference of scienter. Therefore, the district court properly found that plaintiffs have not met the PSLRA's standard for pleading scienter.

## IV.

Accordingly, we affirm the judgment of the district court.

_____

-12-