# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 09-2960/2963/2965/2969/3349/3352/3355/3356

_____

| | | |
|---|---|---|
| Marlin Lustgraaf; Jean Poole, Trustee of the Poole Family Trust, also known as JP; Dee Poole, Trustee of the Poole Family Trust; Milo Vacanti; William Green; JoAnn Green, | * * * * * * * | |
| Plaintiffs-Appellants, | * * | |
| v. | * * * | Appeals from the United States District Court for the District of Nebraska. |
| Bryan S. Behrens, | * * | |
| Defendant, | * * | |
| Sunset Financial Services, Inc.; Kansas City Life Insurance Company, | * * * | |
| Defendants-Appellees. | * | |

_____

Submitted: April 15, 2010
Filed: August 20, 2010

_____

Before LOKEN, BRIGHT, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

This appeal concerns Appellants' claims against Appellees Sunset Financial Services, Inc. ("Sunset") and Kansas City Life Insurance Company ("KCL") for damages arising out of a Ponzi scheme perpetrated by Bryan Behrens, a registered representative of Sunset and general agent of KCL. Appellants brought claims against Sunset and KCL based on theories of federal and state control-person liability and common law theories of secondary liability. The district court granted Sunset's and KCL's motions to dismiss for failure to state a claim and denied Appellants' motions for leave to file amended complaints. Appellants challenge each of these rulings. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. Background

KCL is licensed with the Nebraska Department of Insurance to deal in sickness and accident insurance, life insurance, variable life insurance, and variable annuities. KCL also offers various investment options through Sunset, its wholly-owned subsidiary. Sunset is a broker-dealer registered with the Securities and Exchange Commission ("SEC"). KCL describes Sunset as an "in-house broker/dealer . . . giving agencies and producers the flexibility to offer quality life insurance as well as securities products through a single relationship." Appellants allege that Sunset markets itself as a trusted financial advisory firm with agents and representatives who can be trusted to give advice on insurance and financial matters.

Behrens was President and CEO of 21st Century Financial Group, Inc., which Appellants allege he operated as a branch office of Sunset. He was also a registered representative of Sunset and a general agent of KCL. Appellants allege that KCL promoted Behrens and gave him a number of awards that "expressly and implicitly suggested that Behrens was trustworthy and acting with the authority, consent, and approval of [KCL] and its affiliates and subsidiaries," giving Behrens an "aura of authority."

Appellants allege they invested money with Behrens through National Investments, Inc., an entity that Behrens controlled. In connection with these investments, Behrens sold promissory notes to Appellants, listing National Investments as the borrower. Appellants allege that Behrens took their money with the promise that he would invest it and provide them with a steady stream of income. Rather than invest the money, Behrens "misappropriated the funds for his personal use, spent the money in other ways, or simply transferred money among [Appellants] and other investors to prevent them from discovering the fraud."

Appellants Lustgraaf, Jean and Dee Poole (collectively "Poole"), and Vacanti filed their initial complaints in July 2008, seeking relief from Sunset on theories of federal and state control-person liability and common law theories of secondary liability. They did not name KCL as a defendant in the original complaint. In response, Sunset filed a motion to dismiss Appellants' claims under Rule 12(b)(7) for failure to join a necessary party under Rule 19; Rule 12(b)(6) for failure to state a claim; and Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(1), for failure to plead with particularity. Appellants Lustgraaf, Poole, and Vacanti amended their complaints in January 2009 while Sunset's motion to dismiss was pending before the district court. The amended complaints added KCL as a defendant, but did not make any other changes. Appellants William and JoAnn Green (collectively "Green") then filed an initial complaint alleging the same violations against Sunset and KCL. Sunset subsequently filed a motion to dismiss Green's complaint, and KCL filed a motion to dismiss as to all parties.

In March 2009, the district court granted Sunset's motion to dismiss as to Lustgraaf, Poole, and Vacanti. In July 2009, the district court granted Sunset's motion to dismiss as to Green and KCL's motion to dismiss as to all parties. At that time, the district court also denied Appellants' various motions for leave to file second amended

complaints.[1] The sole ground for the district court's denial was that the proposed second amended complaints failed to correct the deficiencies in the operative complaints and were therefore futile.

On appeal, Appellants argue that the district court erred in dismissing the operative complaints, and, alternatively, that the district court erred in denying their various motions for leave to file second amended complaints. Appellants also argue that the district court improperly took judicial notice of the fact that William Green was a director on National Investments's board. Sunset and KCL argue that the district court correctly granted their motions to dismiss and that we may affirm on alternative grounds. We consider these arguments in turn.

## II. Discussion

The operative complaints allege that Sunset and KCL are liable for Behrens's conduct based on theories of: (A) federal control-person liability; (B) state control-person liability; (C) apparent authority; and (D) respondeat superior. We review the district court's dismissal of these complaints *de novo*. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009). In so doing, we take as true the factual allegations and grant all reasonable inferences in favor of the nonmoving party. Id. We owe no deference, however, to legal conclusions or "formulaic recitation[s] of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). The plausibility of a complaint turns on whether the facts alleged allow us to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

---

[1]Green only filed an initial complaint and a proposed amended complaint. We do not draw this distinction in our opinion as it makes no difference to the outcome.

-4-

The PSLRA imposes a heightened pleading standard in cases alleging securities fraud. Claims governed by the PSLRA must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading" (the "falsity requirement"), 15 U.S.C. § 78u-4(b)(1), and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" (the "scienter requirement"), id. § 78u-4(b)(2); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321 (2007).

Finally, where relevant, we address the district court's denial of Appellants' motions for leave to file second amended complaints. Because the district court dismissed Appellants' motions based on futility, and not as an exercise of its discretion, our review is *de novo*. See Pierson v. Dormire, 484 F.3d 486, 491 (8th Cir. 2007), vacated in part on other grounds, 276 F. App'x 541 (8th Cir. 2008).

A. Federal Control-Person Liability

Counts II and III of the operative complaints allege claims against Sunset and KCL for control-person liability under § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a). The purpose of the federal control-person statute is to "prevent people and entities from using straw parties, subsidiaries, or other agents acting on their behalf to accomplish ends that would be forbidden directly by the securities laws." Laperriere v. Vesta Ins. Group, Inc., 526 F.3d 715, 721 (11th Cir. 2008) (per curiam). To that end, the statute provides for liability of those who, subject to certain defenses, "directly or indirectly" control a primary violator of the federal securities laws. 15 U.S.C. § 78t(a). In providing for liability of controlling persons, however, Congress did not define the meaning of control. See H.R. Rep. No. 73-1383, at 26 (1934) ("It was thought undesirable to attempt to define [control]. It would be difficult if not impossible to enumerate or to anticipate the many ways in which actual control may be exerted."). Rather, it left that task to the courts. Our Court has held that the statute is "'remedial and is to be construed liberally. It has been interpreted

as requiring only some indirect means of discipline or influence short of actual direction to hold a 'controlling person' liable.'" Farley v. Henson, 11 F.3d 827, 836 (8th Cir. 1993) (quoting Myzel v. Fields, 386 F.2d 718, 738 (8th Cir. 1967)). To meet this standard, a plaintiff must prove: (1) that a "primary violator" violated the federal securities laws; (2) that "the alleged control person actually exercised control over the general operations of the primary violator"; and (3) that "the alleged control person possessed—but did not necessarily exercise—the power to determine the specific acts or omissions upon which the underlying violation is predicated." Farley, 11 F.3d at 835. Culpable participation by the alleged control person in the primary violation is not part of a plaintiff's prima facie case. Metge v. Baehler, 762 F.2d 621, 631 (8th Cir. 1985). If a plaintiff satisfies the prima facie burden, the burden shifts to the defendant to show that it "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a); see also Metge, 762 F.2d at 630.

Before addressing the issues particular to Sunset and KCL, we address their argument that we should affirm on the ground that Appellants failed to allege a primary violation with the specificity the PSLRA requires. The plain language of the control-person statute dictates that, absent a primary violation, a claim for control-person liability must fail. See 15 U.S.C. § 78t(a); In re Hutchinson Tech., Inc. Sec. Litig., 536 F.3d 952, 961–62 (8th Cir. 2008). Because the primary violation in this case is Behrens's alleged violation of § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, Appellants must satisfy the PSLRA's heightened pleading requirements. See Hutchinson, 536 F.3d at 958. We are satisfied that they met their burden on both the falsity and scienter requirements.[2]

_____

[2]The PSLRA requirements are more rigorous than those under Rule 9(b) of the Federal Rules of Civil Procedure. In re 2007 Novastar Fin. Inc., Sec. Litig., 579 F.3d 878, 882 (8th Cir. 2002). Accordingly, we also reject the argument that Appellants failed to meet the requirements of Rule 9(b) in their allegations of common law fraud.

It is not enough, under the PSLRA's falsity requirement, to allege that fraud has occurred. In re Cerner Corp. Sec. Litig., 425 F.3d 1079, 1083 (8th Cir. 2005). To meet the falsity requirement, a complaint must not only indicate that false statements were made, but must indicate why the alleged misstatements were false when made. Id. We have previously found allegations insufficient where they point to a statement that a defendant made "and then show[] in hindsight that the statement is false." See, e.g., Elam v. Neidorff, 544 F.3d 921, 927 (8th Cir. 2008) (quoting In re Navarre Corp. Sec. Litig., 299 F.3d 735, 743 (8th Cir. 2002)). Here, however, the problem of hindsight bias is not present and the allegations are not otherwise lacking in specificity. The complaints specify Behrens's alleged false statements: that he would invest Appellants' funds and provide them with a steady stream of returns. It also alleges facts sufficient to support an inference that those statements were false at the time they were made: rather than investing the funds, Behrens misappropriated them for other uses, including the continuation of his fraudulent scheme. Further, the complaints allege the method by which Behrens carried out the fraud. Finally, the complaints allege the dates on which Appellants made their investments with Behrens and the amounts of those investments. Thus, the operative complaints articulate the "who, what, when, where, and how" of the alleged misleading statements. In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 890 (8th Cir. 2002) (quotation omitted). Appellants have met their burden of alleging falsity under the PSLRA.

When determining whether a complaint gives rise to a strong inference of scienter—that the wrongdoing was reckless or intentional—the Supreme Court has instructed us to "consider, not only inferences urged by the plaintiff . . . but also those competing inferences rationally drawn from the facts alleged." Tellabs, 551 U.S. at 314. To find a strong inference, "the inference must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Elam, 544 F.3d at 928 (internal citations omitted). The complaints in this case allege that Behrens knowingly made false statements that allowed him to divert Appellants' money for his personal use and for the use of

perpetuating his fraudulent scheme. We have stated that such allegations raise a strong inference of scienter. See Kushner v. Beverly Enters., Inc., 317 F.3d 820, 827 (8th Cir. 2003) (strong inference of scienter arises where defendant "benefitted in a concrete and personal way from the purported fraud"); Cornelia I. Crowell GST Trust v. Possis Med., Inc., 519 F.3d 778, 782 (8th Cir. 2008) ("Scienter can be established . . . from allegations of motive and opportunity."). Neither Sunset nor KCL offer any rational competing inferences as to Behrens's mental state, nor can we draw any from the complaints. Accordingly, we hold that Appellants' complaints raise a strong inference of scienter.

Having found that the complaints allege with sufficient particularity the presence of a primary violation, we address the remaining prongs of federal control-person liability as they apply to Sunset and KCL.

## 1. Sunset

Unlike the first prong of our control-person test, where fraud is at issue, the second and third prongs involve questions of control and are therefore analyzed under our ordinary notice-pleading standard. See Stephenson v. Deutsche Bank AG, 282 F. Supp. 2d 1032, 1059–60 (D. Minn. 2003); In re Initial Pub. Offering Sec. Litig., 241 F. Supp. 2d 281, 396 n.185 (S.D.N.Y. 2003) ("That . . . the PSLRA was not intended to apply to Section 20(a) claims is further bolstered by the legislative history of the PSLRA, which specifies that its heightened pleading standards only apply to 'securities fraud' claims."). The district court found that Appellants could not establish control-person liability against Sunset because they failed to allege facts supporting their allegations that Sunset exercised control over Behrens generally or had the ability to control Behrens with respect to the fraudulent transactions. Appellants' theory on appeal is that, as a matter of law, a plaintiff states a claim for control-person liability against a broker-dealer such as Sunset when the complaint alleges a primary

violation by the broker-dealer's registered representative. Our decision in Martin v. Shearson Lehman Hutton, Inc., 986 F.2d 242 (8th Cir. 1993), governs the inquiry.

In Martin, a registered representative of the defendant broker-dealer advised the plaintiff to purchase stock that the representative described as a safe investment. Id. at 243–44. Because the defendant broker-dealer had instructed its representatives not to recommend sale of the stock at issue, the representative advised the plaintiff to purchase the stock through a different brokerage house, at which the representative was soon taking employment. Id. at 244. The defendant broker-dealer had no relationship with this other brokerage house. Id. at 243. When the plaintiff discovered fraud in connection with the stock purchase, she sued the defendant broker-dealer as a control person. Id. After a jury verdict for the plaintiff, the broker-dealer appealed, arguing that its connection with the sale was insufficient as a matter of law to support a verdict of control-person liability because: (1) "the sale was not consummated through its brokerage house [and (2)] because the solicitation was directly contrary to its instructions to brokers." Id. at 244. Relying on our decisions in Myzel, 386 F.2d at 738, and Metge, 762 F.2d at 631, as well as the Ninth Circuit's decision in Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1573–78 (9th Cir. 1990) (en banc), we held that the fact that the solicitation took place while the representative was employed by the broker-dealer was "sufficient to make out a prima facie case of controlling person liability," regardless of the fact that the sale took place through a separate and unrelated broker-dealer. Martin, 986 F.2d at 244.

As was the case in Martin and Hollinger, Appellants allege that Behrens's fraudulent transactions took place while he was Sunset's registered representative. Sunset argues that it cannot be a control person because the fraudulent transactions took place through National Investments, a firm having no affiliation with Sunset. Our decision in Martin and the Ninth Circuit's decision in Hollinger, however, stand for the proposition that the involvement of a separate brokerage firm does not render inadequate an otherwise properly pleaded prima facie case for federal control-person

liability. Broker-dealers exercise considerable control over their representatives, both in the sense that their association allows representatives legal access to securities markets, 15 U.S.C. § 78o(a)(1),[3] and in the sense that the securities laws require broker-dealers to establish oversight systems to monitor representatives' activities, id. § 78o(b)(4)(E)(i).[4] Thus, although Behrens's fraud did not take place through Sunset, it is Sunset that effectively provided Behrens access to the markets, and Sunset that had the duty to monitor his activities. Behrens could not have perpetrated his fraudulent scheme absent Appellants' belief that he had access to these markets. Sunset had the responsibility to oversee Behrens's activity with respect to his actions as a registered representative.

The cases Sunset cites in support of its argument do not persuade us to the contrary. In Hauser v. Farell, 14 F.3d 1338 (9th Cir. 1994), overruled on other grounds by Central Bank v. First Interstate Bank, 511 U.S. 164 (1994), the case on which Sunset principally relies, the court upheld a district court's grant of summary judgment on a control-person claim. There, two representatives sold the plaintiffs an interest in a partnership that the representatives themselves owned—a private venture unrelated to the securities markets to which the representatives had access by virtue

---

[3]"It shall be unlawful for any . . . person not associated with a broker or dealer . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in . . . any security . . . ." See also Hollinger, 914 F.2d at 1573–74 ("Because a sales representative must be associated with a registered broker-dealer in order to have legal access to the trading markets, the broker-dealer always has the power to impose conditions upon that association, or to terminate it.").

[4]"The Commission, by order, shall censure, place limitations on . . . suspend . . . or revoke the registration of any broker or dealer if it finds . . . that such broker or dealer . . . (E) . . . has failed reasonably to supervise, with a view to preventing violations [of the securities laws], another person who . . . is subject to his supervision." See also Marion v. TDI, Inc., 591 F.3d 137, 151 (3d Cir. 2010) ("In the context of the 'broker-dealer' relationship . . . we have described section 20(a) as imposing 'a stringent duty to supervise employees.'") (citation omitted).

of their relationship with the broker-dealer.  <u>Id.</u> at 1340, 1343.  Further, there was no evidence that the broker-dealer knew of the transaction.  <u>Id.</u> at 1342–43.  Because of these facts, the court held that the representatives' actions were outside of their relationship with the broker-dealer and therefore could not provide a basis for control-person liability.  <u>Id.</u> at 1342–43.

Hauser is inapplicable here.  <u>Hauser</u> was not a motion-to-dismiss case and its analysis involved facts that are not part of a plaintiff's prima facie burden.  <u>See</u> <u>Martin</u>, 986 F.2d at 244.  Questions of good faith and lack of knowledge, while potentially viable arguments for the defense at summary judgment, are irrelevant to our decision here at the pleadings stage.  Further, we cannot say, taking the present allegations in the light most favorable to the Appellants, that the complaints demonstrate on their face that Behrens's actions were so unrelated to his relationship with Sunset that we could find as a matter of law that Appellants have failed to state a claim.  The remaining cases cited by Sunset are similarly unavailing, as they involve questions appropriately asked at the summary judgment stage rather than the pleadings stage. <u>See</u> <u>Asplund v. Selected Invs. in Fin. Equities, Inc.</u>, 86 Cal. App. 4th 26, 44–45 (Cal. Ct. App. 2000) (analyzing a summary judgment claim based on the considerations found in <u>Hauser</u>); <u>see also</u> <u>Fraioli v. Lemcke</u>, 328 F. Supp. 2d 250, 271–73 (D.R.I. 2004) (same); <u>Barnes v. SWS Fin. Servs., Inc.</u>, 97 S.W.3d 759, 764–65 (Tex. Ct. App. 2003) (same).  Thus, Sunset's proffered cases provide no more than a recognition—with which we agree—that a broker-dealer is not strictly liable for the actions of its representatives.  They are not persuasive at this stage of the litigation.

Finally, we reject Sunset's (and KCL's) invitation to join other circuits in requiring culpable participation by a defendant in an action for control-person liability.  This issue has created a circuit split.  <u>Compare</u> <u>SEC v. First Jersey Secs., Inc.</u>, 101 F.3d 1450, 1472–73 (2d Cir. 1996) (requiring culpable participation); <u>Carpenter v. Harris, Upham & Co.</u>, 594 F.2d 388, 394 (4th Cir. 1979) (same); <u>Rochez Bros., Inc. v. Rhoades</u>, 527 F.2d 880, 890 (3d Cir. 1975) (same); <u>with</u> <u>Metge</u>, 762

F.2d at 631 (culpable participation not required); Howard v. Everex Sys., Inc., 228 F.3d 1057, 1065 (9th Cir. 2000) (same); Maher v. Durango Metals, Inc., 144 F.3d 1302, 1305 (10th Cir. 1998) (same); Harrison v. Dean Witter Reynolds, Inc., 79 F.3d 609, 614 (7th Cir. 1996) (same); Abbott v. Equity Group, Inc., 2 F.3d 613, 619–20 (5th Cir. 1993) (same). Our Court, as noted, has expressly stated that culpable participation by an alleged control person in the primary violation is not an element of the claim. Metge, 762 F.2d at 631. Sunset and KCL argue that the passage of the PSLRA requires us to revisit the issue. We disagree. Congress designed the PSLRA, in part, to curb frivolous securities litigation by way of heightened pleading standards in fraud cases. See Elam, 544 F.3d at 927. Because federal control-person liability is dependent on control, not fraud, the heightened pleading standards instituted by the PSLRA do not provide reason to revisit our Metge decision.

We reverse the district court's dismissal of Appellants' control-person claims against Sunset. Appellants' appeal concerning the proposed second amended complaints on this issue is therefore moot.

## 2. KCL

The district court found that because it dismissed Appellants' claims as to Sunset, the claims against Sunset's parent company, KCL, must also be dismissed. Appellants' argument on appeal as to KCL is similar to their argument as to Sunset; it is an argument based on the relationship of the entities. They argue that because Sunset controls Behrens, and KCL is Sunset's parent company, KCL is a controlling person as to Behrens. Without further allegations as to KCL's actual exercise of control over Behrens's general operations, § 20(a) and our case law interpreting that provision do not permit extension of control-person liability to KCL.

Although we engage in certain presumptions with respect to broker-dealers, see Martin, 986 F.2d at 244, we generally require that a plaintiff allege facts

-12-

demonstrating that the alleged control person "actually exercised" control over the primary violator's *general* operations in order to state a claim for control-person liability. Metge, 762 F.3d at 631; see also Aldridge v. A.T. Cross Corp., 284 F.3d 72, 85 (1st Cir. 2002) ("To meet the control elements, the alleged controlling person must not only have the general power to control the company, but must also actually exercise control over the company."); Harrison, 974 F.2d at 881 (same). Our rule is therefore distinct from courts that only require the ability to control, regardless of whether that control was exercised. See, e.g., Brown v. Enstar Group, Inc., 84 F.3d 393, 396 (11th Cir. 1996). Here, the operative complaints allege that KCL wholly owned Sunset and thereby indirectly controlled Behrens. These allegations show, at most, KCL's ability to control Behrens. They fail, however, to show that KCL actually exercised control over Behrens's general operations. "Unless there are facts that indicate that the controlling shareholders were actively participating in the decisionmaking process of the [primary violator], no controlling liability can be imposed." Aldridge, 284 F.3d at 85.

In re Mutual Funds Investment Litigation, 566 F.3d 111 (4th Cir. 2009), cert. granted, Janus Capital Group, Inc. v. First Derivative Traders, 2010 WL 2555208 (June 28, 2010), the case on which Appellants rely, is not to the contrary. Appellants cite Mutual Funds for the proposition that a parent may control its subsidiary and, indirectly, the subsidiary's employees, simply by virtue of its status as a parent company. Not only does this argument directly conflict with our precedent, it misstates the Fourth Circuit's holding. To be sure, the Fourth Circuit quotes from an article taking the position that Appellants now assert. See id. at 130–31 (quoting Loftus C. Carson, II, The Liability of Controlling Persons Under the Federal Securities Acts, 72 Notre Dame L. Rev. 263, 314 (1997)). But the holding of the case is more nuanced and thus distinguishable from the present case. Mutual Funds did not hold that a parent–subsidiary relationship by itself is enough to overcome a motion to dismiss on a control-person claim. Rather, the Fourth Circuit relied on allegations that the parent company had directors who also took an active role in managing the

-13-

subsidiary. Id. at 131. Specifically, the complaint alleged that the parent had implemented policies to put an end to the subsidiary's actions that led to the lawsuit. Id. These are precisely the type of allegations that demonstrate an exercise of control rather than a mere ability to control. Because any such allegations are absent from the operative complaints in this case, Mutual Funds does not support Appellants' position.

Appellants' proposed second amended complaints fail to cure this deficiency. The second amended complaints contain the additional allegations that: (1) Sunset and KCL operated from the same location; (2) many of Sunset's registered representatives were also agents of KCL; and (3) Sunset and KCL had shared directors and employees. These arguments fall short. First, the mere fact that the two entities shared the same office space is not an allegation of control. Nor, without explanation, is the allegation that there is some crossover in agents and representatives. The second amended complaints do not allege that overlapping agents exercised or even had the authority to control Behrens. Third, although the existence of shared directors is a factor to be considered in determining control, it is not determinative. See Mutual Funds, 566 F.3d at 131. The complaints do not, as did the complaint in Mutual Funds, allege the additional facts necessary to demonstrate that KCL actually exercised control over Behrens's general operations rather than merely possessed the ability to do so. Because this is a required element of Appellants' claim, see Metge, 762 F.3d at 631, we affirm the district court's denial of leave to amend.

B. State Control-Person Liability

Each of the four Appellants asserted a claim under the Securities Act of Nebraska, Neb. Rev. Stat. § 8-1118(3), for state control-person liability. Additionally, Appellants Lustgraaf and Poole asserted alternative claims under the laws of Iowa, Iowa Code § 502.509(7), and Arizona, Ariz. Rev. Stat. § 44-1999, respectively. The district court held that Nebraska law requires a plaintiff to allege that a broker-dealer provided material aid to the primary violator in order to state a claim for control-

-14-

person liability. According to the district court, because the complaints against Sunset and KCL failed to allege material aid, Appellants' claims under Nebraska law failed. In addition, the district court determined that the relevant sections of the Iowa and Arizona laws are "nearly identical" to Nebraska law and therefore dismissed those claims without performing a choice-of-law analysis.

We review the district court's statutory interpretation *de novo.* United States v. Kirchoff, 387 F.3d 748, 750 (8th Cir. 2004). When addressing a state statute, "we are bound by the decisions of the state's highest court." Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 534 (8th Cir. 2006) (quotation omitted). "When a state's highest court has not decided an issue, it is up to this court to predict how the state's highest court would resolve that issue." Id. (quotation omitted). We believe that the supreme courts of the respective states would hold that their control-person statutes do not require a plaintiff to allege material aid in order to state a claim against a broker-dealer. We proceed by discussing the statutes at issue.

The relevant section of the Securities Act of Nebraska states:

Every person who directly or indirectly controls a [primary violator], including every partner, limited liability company member, officer, director, or person occupying a similar status or performing similar functions of a partner, limited liability company member, officer, or director, or employee of such person who materially aids in the conduct giving rise to liability, and every broker-dealer, issuer-dealer, agent, investment adviser, or investment adviser representative who materially aids in such conduct shall be liable jointly and severally with and to the same extent as such person, unless able to sustain the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

Neb. Rev. Stat. § 8-1118(3). The Nebraska courts have not directly addressed whether a broker-dealer must provide material aid to a primary violator in order to be liable as a control person.[5] We believe, however, that in light of the statute's plain language, see Nebraska v. Hense, 753 N.W.2d 832, 837 (Neb. 2008) ("Statutory language is to be given its plain and ordinary meaning . . . ."), and the Nebraska Supreme Court's recent decision in Hooper v. Freedom Fin. Group, Inc., No. S-09-796, 2010 WL 2540448, —N.W.2d— (Neb. June 25, 2010), the statute permits liability, subject to a good-faith defense, against a broker-dealer by proof of either direct or indirect control over the primary violator or by proof that the broker-dealer provided material aid to the primary violator.

The plain language of § 8-1118(3) provides two ways in which a defendant could be held liable as a control person. The statute begins by articulating a broad category of persons[6]—"every person"—that can be held liable by way of direct or indirect control over the primary violator. Included in this broad group is a non-exclusive list of specific persons: partners, limited liability company members, officers, and directors, or persons performing similar roles and functions. The plain language in this first part of the statute indicates that if a plaintiff proves direct or indirect control, the plaintiff is not required to prove that the alleged control person provided material aid. The Nebraska Supreme Court recently confirmed this plain

---

[5]The district court relied heavily on our decision in Benton v. Merrill Lynch & Co., 524 F.3d 866 (8th Cir. 2008), but Benton does not control the inquiry. Although Benton stated that, under the similarly worded Arkansas statute, broker-dealers can be liable to the extent they provide material aid to a primary violator, id. at 870, nothing in the opinion precludes holding that a broker-dealer could be found liable under an alternative theory of direct or indirect control.

[6]The Nebraska statute defines "person" as "an individual, a corporation, a partnership, a limited liability company, an associate, a joint-stock company, a trust in which the interests of the beneficiaries are evidenced by a security, an unincorporated organization, a government, or a political subdivision of a government." Neb. Rev. Stat. § 8-1101(12).

reading.  See Hooper, 2010 WL 2540448, —N.W.2d—, at *7 (holding that, barring their ability to prove a statutory defense, officers and directors, persons having direct or indirect control under the statute, are strictly liable for the actions of primary violators).  If a plaintiff cannot prove direct or indirect control, § 8-1118(3) provides an alternative means of liability as to certain persons: proof that the alleged control person provided material aid to the primary violator.  A plaintiff can apply this alternative theory to employees of a person who directly or indirectly controls the primary violator and to broker-dealers, issuer-dealers, agents, investment advisers, or investment advisor representatives.

Applying the plain language of the statute to the present case, we believe that the statute permits liability against broker-dealers without reference to material aid.  By articulating a broad group—"every person"—the first part of the statute permits liability against all persons who directly or indirectly control a primary violator, regardless of whether they provided material aid.  Given the right facts, a broker-dealer such as Sunset could fall within this first part of the statute.  Contrary to Sunset's and KCL's argument, the part of the statute permitting liability against broker-dealers by way of material aid does not alter this conclusion.  Although specific provisions may sometimes govern over general provisions, Nebraska ex rel. Strom v. Marsh, 77 N.W.2d 163, 166 (Neb. 1956), this rule of construction is only applicable when there is a conflict between the two provisions that creates ambiguity, id.; see also Cox Neb. Telecom, LLC v. Qwest Corp., 687 N.W.2d 188, 192 (Neb. 2004) ("*To the extent that there is a conflict* between two statutes on the same subject, the specific statute controls over the general statute.") (emphasis added).  Here, there is no such conflict and the language is clear.  The material aid part of the statute provides one way in which to establish liability against broker-dealers[7]; it does not

---

[7]Appellants argue that a broker-dealer materially aids its registered representative simply by virtue of their association, on the theory that the representative could not have sold securities and thereby violated the relevant statute without being affiliated with the broker-dealer.  We reject this argument.  Because all

-17-

limit a plaintiff's ability to take the alternative avenue of proving direct or indirect control.

Our analysis of the Iowa statute is similar. The Iowa statute articulates a broad category of persons[8] who, without reference to material aid, can be liable, barring statutory defenses, for the conduct of a primary violator by directly or indirectly controlling the primary violator. See Iowa Code § 502.509(7)(a) ("A person that directly or indirectly controls a [primary violator]" is jointly and severally liable with the primary violator, unless able to prove a statutory defense.). Like the Nebraska statute, this inclusive language is plain on its face and we need not engage in other methods of statutory interpretation. See Renda v. Iowa Civil Rights Comm'n, 784 N.W.2d 8, 15 (Iowa 2010) ("If the language is clear and plain, we will not utilize construction."). By declining to limit the persons subject to liability under § 502.509(7)(a), we believe that a broker-dealer, given the right facts, could be liable without reference to material aid.

The specific reference in § 502.509(7)(d) to material aid as a way in which a broker-dealer can be found liable does not persuade us to the contrary. As with the Nebraska statute, this is not a case of the specific governing over the general because there is no conflict between the two subsections of the statute. See McElroy v. Iowa,

---

representatives are required by Nebraska law to be employed by a broker-dealer to sell securities, Neb. Rev. Stat. § 8-1103(1), Appellants' proposed rule would attach material aid to every broker-dealer, largely reading material aid out of the statute, and violating the rule of statutory interpretation that a court give meaning to every clause of a statute. See Herrington v. P.R. Ventures, LLC, 781 N.W.2d 196, 199 (Neb. 2010).

[8]The Iowa statute defines "person" as an "individual; corporation; business trust; estate; trust; partnership; limited liability company; association; cooperative; joint venture; government; government subdivision, agency, or instrumentality; public corporation; or any other legal or commercial entity. Iowa Code § 502.102(20).

637 N.W.2d 488, 494 (Iowa 2001) ("Typically, when a general and specific statute cover the same matter, the specific statue governs over any conflict with the general statute."). Section 502.509(7)(d) is simply an alternative to § 502.509(7)(a) for asserting liability against a broker-dealer.

Finally, neither Sunset nor KCL argue that Arizona's statute, Ariz. Rev. Stat. § 44-1999(B), requires material aid in this situation. The Arizona statute states, in relevant part, that "Every person[9] who, directly or indirectly, controls any [primary violator] is liable jointly and severally with and to the same extent as the controlled person . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act underlying the action." Id. § 44-1999(B). Nowhere in the language of the statute is there an indication of a material-aid requirement, and at least one Arizona court has reached this conclusion. See Eastern Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n, 79 P.3d 86, 99 (Ariz. Ct. App. 2003) ("The plain language of the statute does not support a requirement that a 'controlling person' must have actually participated in the specific action upon which the securities violation is based.").

We conclude that, contrary to the district court's order, all three of the relevant state statutes permit liability against a broker-dealer based on proof of direct or indirect control of the primary violator; a plaintiff need not always prove material aid. Going forward, the district court must apply the law of the appropriate state after conducting a choice-of-law analysis. At this point, however, given our above analysis of the relevant statutes, we can say that, regardless of what state law applies, Appellants have put forth sufficient allegations to overcome Sunset's motion to dismiss. Although a more developed record might reveal that Sunset has a valid statutory defense, at this early stage of the litigation, Appellants have sufficiently

---

[9]The Arizona statute defines "person" as "an individual, corporation, partnership, association, joint stock company or trust, limited liability company, government or governmental subdivision or agency or any other unincorporated organization." Ariz. Rev. Stat. § 44-1801(16).

alleged that Sunset was a control person with respect to Behrens. With respect to KCL, however, the relevant complaints are devoid of any allegations sufficient to show control. Without further allegations, KCL is simply too far removed from the relevant transactions to have directly or indirectly controlled Behrens with respect to the underlying fraud in this case.

## C. Common Law Claims

In addition to their statutory claims, Appellants alleged claims on the basis of apparent authority and respondeat superior. The district court dismissed each of these claims and denied Appellants' motions for leave to amend. Regardless of which state's law applies, the elements of these claims are materially the same. For this reason, we address the merits as to both Sunset and KCL.

### 1. Apparent Authority

To state a claim based on apparent authority, a plaintiff must allege facts showing that "the alleged principal affirmatively, intentionally, or by lack of ordinary care cause[d] third persons to act upon the apparent agency." Draemel v. Rufenacht, Bromagen & Hertz, Inc., 392 N.W.2d 759, 763 (Neb. 1986); see also Curran v. Indus. Comm'n of Ariz., 752 P.2d 523, 526 (Ariz. Ct. App. 1988); Iowa v. Sellers, 258 N.W.2d 292, 297 (Iowa 1977). Although the fact that an alleged agent's actions were fraudulent or even specifically against the direction of the principal does not preclude liability, those actions must be within the scope of the apparent authority conferred by the principal. See, e.g., Draemel, 392 N.W.2d at 765.

#### a. Sunset

The operative complaints allege that Sunset's association with Behrens created an "aura of authority and trustworthiness," an "aura of credibility." This aura of

authority, Appellants allege, "was important in permitting Behrens to defraud the Plaintiffs." At most, these allegations can be read to mean that Sunset made it more likely that Appellants would deal with Behrens. They cannot, however, be read to allege that Sunset made statements that caused Appellants to believe that Behrens was acting with Sunset's authority when he facilitated transactions through National Investments. It is not enough that a principal's action or inaction causes a third person to deal with the principal's alleged agent. The principal must cause the third person to reasonably believe the principal has consented to the agent acting on its behalf. See, e.g., First Nat'l Bank of Omaha v. Acceptance Ins. Co., 675 N.W.2d 689, 702 (Neb. Ct. App. 2004) ("It would be difficult to see how someone can act upon appearances without relying upon them . . . ."). The operative complaints therefore fail to state a claim under the doctrine of apparent authority.

The proposed second amended complaints are also deficient. They allege the additional facts that: (1) Behrens's business card referred to Sunset; (2) Behrens had plaques and awards on his walls that Appellants believed to have been from Sunset; (3) Behrens's newsletters and brochures referred to Sunset; (4) Behrens told Plaintiffs that 21st Century was subject to inspections and audits by Sunset; and (5) 21st Century Financial's website referred to Sunset. These additional allegations are insufficient because they do not show what Sunset did to confer authority. They are all actions taken by Behrens and are therefore insufficient to state a claim based on apparent authority. See, e.g., Draemel, 392 N.W.2d at 763 (Apparent authority "cannot be established by the acts, declarations, or conduct of an agent").

## b. KCL

The operative complaints allege that KCL named Behrens to its Advisory Council and gave him a number of awards that "expressly and implicitly suggested" trustworthiness and authority to act on KCL's behalf, including its highest honor, the "Agency Building Award." There is no question that Behrens had authority from

KCL to act as an insurance agent. However, the complaints fail to allege facts showing that this authority included dealing in securities. Further, there is no allegation that KCL did anything, either intentionally or negligently, to otherwise lead Appellants to believe that Behrens had authority to engage in securities dealings on KCL's behalf. The representations as to Behrens's trustworthiness and the conferral of awards do not alter this conclusion. The complaints do not allege facts demonstrating that these awards or any statements that KCL made in any way related to Behrens's authority to sell securities. Further, as with Sunset, the complaints contain no indication that any of the Appellants were aware of these awards, let alone that the awards led them to believe that KCL had authorized Behrens to act on its behalf. The absence of this allegation is fatal to Appellants' complaints. See, e.g., id.

The district was also correct in refusing to grant Appellants' motions for leave to amend based on the futility of the proposed second amended complaints. Appellants rely on a portion of the complaints in which they allege that KCL indicated Behrens could offer financial advice. This, they claim, supports the allegation that the sale of securities was within the scope of Behrens's duties with respect to KCL. Even assuming that "financial advice" means advice with respect to securities, the complaints go on to allege that the advice was offered through a separate entity, Sunset. There are no facts alleged to show that KCL did anything to indicate that Behrens was authorized to sell securities through KCL, an entity that the complaints indicate is only licensed to deal in insurance, not securities. Without factual allegations that Behrens's securities dealings were within the scope of authority conferred by KCL, the second amended complaints are futile.

2. Respondeat Superior

An employer is vicariously liable for the acts of its employee if the employee is acting within the scope of his employment when committing the acts. Kocsis v. Harrison, 543 N.W.2d 164, 168 (Neb. 1996); see also Baker ex rel. Hall Brake Supply,

Inc. v. Stewart Title & Trust of Phoenix, Inc., 5 P.3d 249, 254 (Ariz. Ct. App. 2000); Godar v. Edwards, 588 N.W.2d 701, 705 (Iowa 1999). An act is within the scope of an employee's employment if "it is of the kind he is employed to perform, it occurred substantially within the authorized time and space limits, and it is actuated, at least in part, by a purpose to serve the master." E.g., Strong v. K & K Inv., Inc., 343 N.W.2d 912, 915–16 (Neb. 1984); see also Godar, 588 N.W.2d at 706 ("[A] deviation from the employer's business or interest to pursue the employee's own business or interest must be *substantial in nature* to relieve the employer from liability.") (quotation omitted). Unlike a claim under the doctrine of apparent authority, a claim based on respondeat superior does not require affirmative actions or negligence by the party to be held vicariously liable for the agent's actions. Compare Strong, 343 N.W.2d at 915–16, with Draemel, 392 N.W.2d at 763.

## a. Sunset

The operative complaints allege that Behrens was a registered representative of Sunset, that he conducted a Ponzi scheme involving the sale of securities, and that Sunset is therefore liable under a theory of respondeat superior. The parties do not dispute on appeal that Behrens was employed by Sunset. Further, we believe the complaints, taken as a whole, adequately allege that Behrens was employed by Sunset with respect to the transactions that lead to Appellants' injuries. The complaints allege that Sunset "facilitates the purchase, sale and management of securities." The complaints also indicate that Behrens, a registered representative, was a financial advisor with Sunset. The fraud at issue is alleged to have arisen out of the financial advice that Behrens gave Appellants with respect to securities transactions. These allegations adequately plead that the fraudulent acts were in "'the class of service to which the fraudulent act belongs.'" Strong, 343 N.W.2d at 916 (citation omitted). The complaints falls short, however, in that they allege no facts in regard to whether the fraud took place "within the authorized time and space limits" or was committed with

-23-

at least some intent to benefit Sunset. Without such allegations, the district court properly dismissed the operative complaints.

We believe, however, that the second amended complaints cure these deficiencies and district court erred in finding that leave to amend would be futile. The second amended complaints allege that the fraudulent representations took place in the offices of 21st Century Financial, the Sunset branch office that Behrens ran, and that Behrens maintained at least some of National Investments's files at the branch office. This sufficiently alleges that the fraudulent actions took place within the authorized time and space limit. See, e.g., Smithey v. Hansberger, 938 P.2d 498, 502 (Ariz. Ct. App. 1996) (employer performing usual duties during scheduled workday is operating within the "time and space limit"). In addition, the second amended complaints allege that 21st Century had been losing hundreds of thousands of dollars and that Behrens used money derived from his fraudulent scheme to help counteract these losses. This sufficiently alleges that the fraud was actuated, at least in part, to benefit Sunset. See, e.g., Hawkins v. Inserra, No. 8:07CV368, 2007 WL 4527836, at *7 (D. Neb. Dec. 18, 2007) (unpublished) (holding, under Nebraska law, that a representative's fraudulent actions in connection with a potential client were actuated in part to benefit a broker-dealer where they were performed to persuade the client to open an account with the broker-dealer); Baker, 5 P.3d at 255 (holding that wrongful activity benefitted an employer for the purposes of respondeat superior where the activity generated additional fees for the employer). We believe that Appellants' second amended complaints state a claim based on respondeat superior and reverse the district court's finding of futility. In so holding, we make no ruling as to whether denial would be proper as a matter of the court's discretion.

b. KCL

The complaints against KCL allege that Behrens was employed by KCL, a company licensed by the state of Nebraska to deal in insurance, not a registered

broker-dealer authorized to deal in securities. The complaints fail to allege how Behrens's securities fraud was in any way related to his position as a general agent of an insurance company. Further, the complaints fail to allege that the fraudulent acts took place within the authorized time and space limits, or that Behrens's carried out the fraudulent scheme with the purpose of benefitting KCL. For these reasons, the district court correctly dismissed the claim.

The district court was also correct in finding that Appellants' proposed second amended complaints are futile. As with their claims based on apparent authority, Appellants' second amended complaints do not address their failure to allege facts showing that Behrens's acts were of the kind he was employed to perform as KCL's general agent. The facts alleged in the second amended complaints show only that Behrens was engaged to deal in securities by Sunset, not KCL. Accordingly, the second amended complaints fail to show that the fraud arising out of this activity was of the type Behrens was authorized to perform on behalf of KCL and are therefore futile.

## D. Proposed Alternative Grounds for Affirmance

Sunset and KCL raise two additional grounds that they claim support affirming the district court. Although we may affirm "on any basis supported by the record," McAdams v. McCord, 584 F.3d 1111, 1113–14 (8th Cir. 2009) (quotation omitted), the proffered arguments do not provide reason to do so in this case.

Sunset and KCL first argue that dismissal is proper under Rule 12(b)(7) for Appellants' failure to join a necessary party under Rule 19. They argue that National Investments must be joined as a joint tortfeasor. Stemming from this, they argue that Michelle Behrens, as a trustee, officer, and president of National Investments must be joined because state law permits suit against such individuals. We reject this argument, as it is based on the flawed premise that joint tortfeasors are necessary

parties under Rule 19(b). "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." Bailey v. Bayer CropScience L.P., 563 F.3d 302, 308 (8th Cir. 2009) (quotation omitted).

Sunset and KCL also argue that Mr. Green should be barred from recovery under the doctrine of *in pari delicto* because he participated in the alleged wrongdoing. This argument is premised on the district court's judicial notice of National Investments's forms filed with the Nevada Secretary of State, at least one of which lists Mr. Green as a director of National Investments. It is unclear whether the district court took judicial notice of the truth of the matter contained in the records, i.e., that Mr. Green is in fact a director, or simply took judicial notice that the records so stated. Judicial notice of a fact is only to be taken when that fact is not subject to reasonable dispute. Fed. R. Evid. 201(b); Kushner v. Beverly Enters., Inc., 317 F.3d 820, 830 (8th Cir. 2003); see also Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999) ("[W]hen considering a motion to dismiss in a securities fraud case, [a court] may take judicial notice (for the purpose of determining what statements the documents contain and *not to prove the truth of the documents' contents*) of relevant public documents . . . .") (emphasis added). In his declaration supporting his opposition to the motion for judicial notice, Mr. Green disputed that he was ever a director on National Investments's board. This subjects the issue to reasonable dispute. Accordingly, to the extent that the district court took judicial notice of the truth of the document's content, this was an abuse of discretion. Because the fact is therefore in dispute, it is not a proper basis on which to dismiss a claim. Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).

## III. Conclusion

For the foregoing reasons, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

_____

-26-